UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| NEDRA MITCHELL, | § <br> § |
| Plaintiff, | § <br> § |
| v. | §    Case # 1:18-cv-686-DB <br> § |
| COMMISSIONER OF SOCIAL SECURITY, | §    MEMORANDUM DECISION <br> §    AND ORDER |
| Defendant. | § |

## INTRODUCTION

Plaintiff Nedra Mitchell ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned, in accordance with a standing order.

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 10,[1] 15. Plaintiff also filed a reply. *See* ECF No. 16. For the reasons set forth below, Plaintiff's motion (ECF No.10) is **DENIED**, and the Commissioner's motion (ECF No. 15) is **GRANTED**.

## BACKGROUND

On December 12, 2014, Plaintiff filed her DIB application, alleging a disability beginning November 20, 2012 (the disability onset date), due to: (1) speech problems; (2) diabetes; (3) memory loss; (4) thyroid problem; and (5) high blood pressure. Transcript ("Tr.") 201-07, 213.

---

[1] The Court notes that page two of the Memorandum of Law annexed to Plaintiff's motion (ECF No. 10-1) incorrectly names Plaintiff as "Theresa Ann Ford." The Court assumes this is a typographical error and considers the information in the brief as pertaining to Plaintiff Nedra Mitchell.

Plaintiff's claim was initially denied on March 13, 2015, after which she requested an administrative hearing. Plaintiff's hearing was held on August 2, 2017. Administrative Law Judge Rosanne M. Dummer (the "ALJ") presided over the hearing via video from Alexandria, Virginia. Tr. 15. Plaintiff appeared and testified from Buffalo, New York, and was represented by Jeanne Murray, an attorney. Tr. 49-73. Jane F. Beougher, an impartial vocational expert ("VE") also appeared and testified at the hearing. *Id*.

The ALJ issued an unfavorable decision on August 30, 2017, finding that Plaintiff was not disabled under sections 216(i) and 223(d) of the Act. Tr. 12-30. On April 25, 2018, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## **LEGAL STANDARD**

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

## II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the

Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## **ADMINISTRATIVE LAW JUDGE'S FINDINGS**

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in her August 30, 2017 decision:

1. The claimant last met the insured status requirements of the Social Security Act on September 30, 2015;

2. The claimant did not engage in substantial gainful activity during the period from the alleged onset date of November 20, 2012 through her date last insured of September 30, 2015 (20 CFR 404.1571 *et seq.*);

3. Through the date last insured, the claimant had the following severe impairments: diabetes mellitus, hypertension, hypothyroidism and hepatitis b (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526);

5. Through the date last insured, the claimant had the residual functional capacity to perform light work[2] as defined in 20 CFR 404.1567(b). The claimant could lift/carry up twenty pounds occasionally and ten pounds frequently; sit about six of eight hours, two hours a time, stand four of eight hours, one hour a time, and walk three of eight hours, 30 minutes at a time. The claimant should not climb ladders or scaffolds; she could frequently climb ramps/stairs. She should avoid unprotected heights, extreme heat and cold. She could occasionally work around moving mechanical parts, and tolerate humidity/wetness, pulmonary (i.e. dust, odors, fumes) and vibrations. She could frequently operate a motor vehicle. The claimant could tolerate moderate noise (i.e., office environment);

6. Through the date last insured, the claimant was capable of performing past relevant work as a supervisor, residential care, as generally performed. This work did not require the

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

4

performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565);

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from November 20, 2012, the alleged onset date, through September 30, 2015, the date last insured (20 CFR 404.1520(1)).

Tr. at 12-30.

Accordingly, the ALJ determined that, for a period of disability and disability insurance benefits filed on December 12, 2014, the claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act through September 30, 2015. *Id*. at 30.

## **ANALYSIS**

Plaintiff argues a single point of error: Plaintiff argues that the ALJ should have found that she had the severe impairment of status post hypoglycemic encephalopathy[3] at step two. *See* ECF No. 10. at 14-15. The ALJ determined that, because Plaintiff's hypoglycemic encephalopathy caused no more than a "mild" limitation in any of the functional areas, it was not a severe impairment. Tr. 17-18 (citing 20 CFR 416.920a(d)(l))). In response, the Commissioner argues the record fully supported the ALJ's step-two finding, and the ALJ correctly determined that Plaintiff's February 2012 hypoglycemic encephalopathy was a non-severe impairment. *See* ECF No. 15-1 at 16.

An impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). An impairment is "not severe" if it does not significantly limit a claimant's physical or mental capacity to perform basic work activities. *See* 20 C.F.R. § 404.1522; Social Security Ruling (SSR) 96-3p, Considering Allegations of Pain and

---

[3] Hypoglycemic encephalopathy is defined as coma/stupor and blood glucose levels <50 mg/dl on admission, persistence of coma/stupor for 24 or greater hours despite normalization of blood glucose levels and exclusion of any other cause of coma/stupor). Fatima Mubarak, Zafar Sajjad & Shayan S.M. Anwar, *Case of the Week: A 45-year-old man with diabetes mellitus and hypertension presented with seizures, now in coma*, AM. J. OF NEURORADIOLOGY (Sapna Rawal & Juan Pablo Cruz, eds., April 2, 2015).

5

Other Symptoms in Determining Whether a Medically Determinable Impairment is Severe, 1996 WL 374181, at *1 (SSA July 2, 1996); *Bowen v. Yuckert*, 482 U. S. 137 (1987). While the ALJ uses medical sources to provide evidence, including opinions, on the nature and severity of a claimant's impairment(s), the final responsibility for deciding severity is reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(2). Plaintiff bears the burden of demonstrating that an impairment is severe. *See Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013); *Yuckert*, 482 U.S. at 146 n.5; *Woodmancy v. Colvin*, 577 Fed. App'x 72, 74 (2d Cir. 2014) ("A claimant has the burden of establishing that she has a 'severe impairment,' which is 'any impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work.'") (citation and quotation marks omitted).

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77. While Plaintiff contends "the ALJ substituted her own judgment for competent medical opinion" (ECF No. 10-1 at 15-17), the record does not contain any medical-source opinions that identified hypoglycemic encephalopathy (or cerebrovascular accident) as a severe impairment during the relevant period; nor, are there any opinions identifying or specifying limitations. "In the absence of any medical source opinion specifying limitations posed by [the] plaintiff's migraines on his ability to perform basic work activities, the ALJ's finding that [the] plaintiff's migraines are a non-severe impairment is supported by substantial evidence." *Spina v. Colvin*, 11-CV-1496, 2014 WL 502503, at *4 (N.D.N.Y. Feb. 7, 2014); *see* 20 C.F.R. § 404.1527(d)(2). The ALJ's

6

findings that Plaintiff recovered from her 2012 episode and that it was a nonsevere impairment were supported by medical opinions. State-agency psychological consultant L. Hoffman ("Dr. Hoffman") analyzed the record and completed a consultative psychiatric examination. Tr. 17, 22, 79-80. Dr. Hoffman considered Plaintiff's functioning under the paragraph B criteria of Listing 12.02 and found that Plaintiff had no limitations in social functioning; mild limitations in her activities of daily living and maintaining concentration, persistence, and pace; and no repeated episodes of decompensation. Tr. 79-80. As noted by the ALJ, Dr. Hoffman found that Plaintiff had a full recovery from her 2012 cerebrovascular accident ("CVA") and found that her resulting functional limitations were not severe. Tr. 17, 22, 80.

Plaintiff also argues that the RFC should have contained mental limitations addressing her alleged speech and cognitive deficits. *See* ECF No. 10-1 at 12, 17-19. An individual's RFC is her "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting Social Security Ruling (SSR) 96-8p, Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, *2 (July 2, 1996)). To determine the RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and a claimant's subjective complaints. *See* 20 C.F.R. § 404.1545. While "the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he [is] entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 Fed. App'x 53, 56 (2d Cir. 2013) (citation omitted); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (citation omitted). The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ. *See* 20 C.F.R. §§ 404.1512,

404.1545(a)(3); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (The claimant bears both the general burden of proving disability within the meaning of the Act and the burden of proof at the first four steps.); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009).

In determining the RFC, the ALJ repeatedly stated that she considered Plaintiff's severe and nonsevere impairments. Tr. 18, 23. The record reflects that the ALJ thoroughly considered the medical evidence and opinions, as well as Plaintiff's allegations. Tr. 19-24. Plaintiff had the benefit of three consultative examinations performed after the CVA event. The ALJ properly found that the RFC was supported by the medical evidence of record, including the history of her 2012 CVA, her routine primary care, and her reported activities, as well as inconsistencies in Plaintiff's statements when compared with the record evidence. Tr. 19-24. Plaintiff fails to show that she cannot perform the RFC as found by the ALJ. *See* 20 C.F.R. §§ 404.1512, 404.1545(a)(3); *Burgess*, 537 F.3d at 128; *Poupore*, 566 F.3d at 305-06.

The Court finds that the ALJ fully and fairly considered Plaintiff's case. The evidence overwhelmingly supports the ALJ's decision. The evidence of record simply fails to demonstrate that Plaintiff's alleged cognitive and speech deficits were severe impairments as defined by the Act. Although as noted, she was admitted for a CVA event, she appears to have recovered. CT scans at the time of her admission note no acute infarction, hemorrhage or mass. Tr. 368. Her MRA (magnetic resonance angiogram) was unremarkable. Tr. 369. Her brain MRI was similarly unremarkable, although some cervical changes were noted. Tr. 370. In July 2012, a few months after her CVA, consultative examiner Abrar Siddiqui, M.D. ("Dr. Siddiqui") noted no speech problems. Tr. 373. A month later, consultative examiner Gregory Fabiano, Ph.D. ("Dr. Fabiano") noted that her speech was fluent, quality of voice clear, and her receptive and expressive languages were adequate. Tr. 379. Although records from ECMCC note that Plaintiff was not checking her

glucose regularly, she denied any neurological complaints. Tr. 246, 276,281, 286, 291, 295, 300. In 2015, she reported to her primary care clinic that she had no known diabetic complications. Tr. 294 Her most recent exam noted she was off Metformin and her last Hgb1Ac was well within normal limits at 5.5%. Tr. 279. A consultative examination by Samuel Balderman, M.D. ("Dr. Balderman"), in February 2015 noted she was in no acute distress. Tr. 257. An assessment by the Buffalo Hearing and Speech Center noted that her functional communication measures were moderately delayed but her skills for speech production were within normal limits. Tr. 263. Her articulation skills and receptive vocabulary abilities were also normal. Tr. 261. Her fluency was slightly reduced. Tr. 263. Overall, Plaintiff's prognosis to achieve improved receptive and expressive language skills with skilled intervention was noted as good. *Id*. Accordingly, the Court finds the ALJ's analysis with respect to Plaintiff's hypoglycemic encephalopathy and any alleged limitations arising therefrom was thorough and supported by substantial evidence. No further elaboration by the Court is necessary.

Finally, Plaintiff complains that "the ALJ does not even mention or consider the Grid Rules." *See* ECF No. 10-1 at 18-20. The ALJ did not discuss the medical-vocational guidelines because such guidelines are only considered at step five. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 404.1560(c). "Only when it is determined that an individual does not possess the residual functioning capacity to perform past relevant work at step four is the ALJ required to conduct an analysis under step five." *Dannettel v. Comm'r of Soc. Sec. Admin.*, No. 6:12-CV-01890 MAD, 2014 WL 4854980, at *7 (N.D.N.Y. Sept. 30, 2014) (citing *Melillo v. Astrue*, No. 7:06–CV–698, 2009 WL 1559825, *22 (N.D.N.Y. June 3, 2009). Because Plaintiff was found capable of performing her past relevant work at step four, the ALJ properly did not reach step five of the sequential-evaluation process. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), (e)-(f), 404.1560(b).

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 10) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 15) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE